**Nos. 12-9526, 12-9527**

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

STATE OF OKLAHOMA EX REL. SCOTT PRUITT, in his official capacity as
Attorney General of Oklahoma, OKLAHOMA INDUSTRIAL ENERGY
CONSUMERS, OKLAHOMA GAS AND ELECTRIC COMPANY,
Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
Respondent,

SIERRA CLUB,
Intervenor-Respondent.

---

Petition for Review of a Final Rule of the United States Environmental Protection
Agency

---

**PETITIONER OKLAHOMA GAS AND ELECTRIC COMPANY'S
PETITION FOR PANEL REHEARING OR REHEARING *EN BANC***

---

Brian J. Murray
Charles T. Wehland
JONES DAY
77 West Wacker Drive
Chicago, IL   60601
Telephone:  (312) 782-3939
Facsimile:    (312) 782-8585
Email:  bjmurray@jonesday.com
            ctwehland@jonesday.com

Michael L. Rice
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:  (832) 239-3640
Facsimile:    (832) 239-3600
Email:  mlrice@jonesday.com

**ATTORNEYS FOR OKLAHOMA
GAS AND ELECTRIC COMPANY**

## CORPORATE DISCLOSURE STATEMENT

Petitioner Oklahoma Gas and Electric Company is a wholly-owned subsidiary of OGE Energy Corp.  No publicly held corporation owns 10% or more of the stock of OGE Energy Corp.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ ii

STATEMENT REGARDING QUESTION PRESENTED FOR *EN BANC* REVIEW ...................................................................................... 1

INTRODUCTION ......................................................................... 1

ARGUMENT ................................................................................ 5

I.    THE MAJORITY'S DECISION DEPRIVES OKLAHOMA OF ITS CONGRESSIONALLY MANDATED ROLE WITH RESPECT TO DETERMINING BART. ................................................................ 5

II.   THE MAJORITY'S DECISION MISREAD THE RECORD. ........................ 8

  A.   The Majority's Decision Allowed EPA to Deviate from the Regional Haze Rule in Analyzing OG&E's Cost Benefit Analysis ............ 8

  B.   The Majority's Decision Allowed EPA to Arbitrarily Reject Oklahoma's Use of a 20-Year Scrubber Useful Life ................................... 10

  C.   Petitioners Stated a Valid Objection to EPA's Use of Aggregate Visibility Impacts from Multiple Sources .................................... 12

  D.   Petitioners Did Not Abandon Their Position That the Overnight Cost Method Is Not Required by the Control Cost Manual. ....................... 13

CONCLUSION ............................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Am. Corn Growers Ass'n v. EPA*,
  291 F.3d 1 (D.C. Cir. 2002) .................................................... 1, 3, 6, 13

*Ariz. Pub. Service Co. v. EPA*,
  562 F.3d 1116 (10th Cir. 2009) ................................................5

*Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*,
  No. 11-9524, 2013 WL 2398691 (10th Cir. June 4, 2013) .................................10

*San Juan Citizens Alliance v. Stiles*,
  654 F.3d 1038 (10th Cir. 2011) ................................................9

## Statutes

42 U.S.C. § 7479(3) ................................................5

42 U.S.C. § 7491(b)(2)(A) ................................................5

42 U.S.C. § 7491(g)(2) ................................................5

## Regulations

Final Oklahoma Rule, 76 Fed. Reg. 81,728 (Dec. 28, 2011) ................................12

## STATEMENT REGARDING QUESTION PRESENTED
## FOR *EN BANC* REVIEW

Review by the Court *en banc* is warranted under the standard set out in Federal Rule of Appellate Procedure 35(b)(1)(B) because the case involves the following question of exceptional importance, on which the majority's opinion conflicts with the decision of the D.C. Circuit in *American Corn Growers Ass'n v. EPA*, 291 F.3d 1 (D.C. Cir. 2002):

Does EPA's *de novo* review and rejection of Oklahoma's state implementation plan ("SIP") dealing with the Clean Air Act's aesthetic-based regional haze provisions receive deference during judicial review, such that the burden of proof is on the State to demonstrate that EPA's rejection of the SIP was arbitrary and capricious?

## INTRODUCTION

Panel rehearing or rehearing *en banc* is required to ensure that this Circuit's decision—one of the first in the country to address EPA's review under the Clean Air Act's ("CAA" or the "Act") regional haze provisions—is faithful to administrative law principles and the voluminous record prepared during rulemaking.  Oklahoma adopted a regional haze plan that was subject to EPA approval.  EPA rejected the State's rule and adopted its own that requires Petitioner Oklahoma Gas and Electric Company ("OG&E") to spend some $1.2 billion to install scrubbers on four coal-fired electric generating units (the "OG&E

1

Units").  After the Court stayed EPA's action pending merits review, a divided

panel upheld EPA's rule.  But the Panel's decision does not give the State's

implementation of the regional haze provisions appropriate deference and

compounds the error by misreading the record in this case, warranting a rehearing.

*First*, by according EPA the deference that is reserved by the CAA to the

State, the Panel majority's decision undermined the State's exercise of its authority

under the CAA.  Repeatedly throughout the course of its review of EPA's decision,

the Court defers to EPA's preferences as long as EPA's hired consultant provided

some explanation.  But the test should not have been whether EPA's approach

could be justified.  It should have been whether EPA had a basis to say that the

State's approach violated some mandatory requirement in the regulations or was

itself arbitrary.  The majority's decision would leave States unable to determine

with certainty what approach to regional haze is acceptable because the majority

gives EPA the freedom to adopt any one of multiple possible interpretations of

baseline emissions, application of the Control Cost Manual ("CCM"), or even the

engineering of technically feasible controls.  By painting its review of EPA's

action in rejecting the Oklahoma SIP with the same broad, deferential brush that it

viewed EPA's adoption of its own federal implementation plan ("FIP"), the

majority improperly disturbs the State's authority to determine the best available

retrofit technology ("BART"), contrary to the CAA and in conflict with the D.C.

Circuit's decision in *American Corn Growers*, 291 F.3d 1.

*Second*, because the majority was overly deferential in its review of EPA's

action, it failed to conduct a meaningful examination of the explanations

underlying EPA's cost analysis.  The Court should have required EPA to show

why the State's rule was unreasonable before EPA could reject the Oklahoma SIP.

If the Court had given EPA's rejection of the SIP that level of review, it would

have found that EPA's explanations were frequently based on assumptions

unsupported by the record, contrary to basic engineering or economic realities, or

based on materials or analysis that EPA did not provide to Oklahoma during the

State's lengthy process for making its BART determination.  This aspect of the

decision is particularly important because the majority recognized that even under

its deferential standard of review, it was a close case.  (Op. at 34.)  In particular,

the Panel's review countenanced the following errors in EPA's rulemaking:

- EPA ignored technical design requirements for the scrubbers needed to maintain the existing functionality of the OG&E Units and ignored EPA's own guidelines requiring the use of past actual emissions to measure the effect of the addition of scrubbers.

- EPA deviated from the 20-year useful life of scrubbers used by Oklahoma even though a 20-year life has been used in other cost analyses and has been acknowledged by EPA as being consistent with the CCM. That error alone resulted in understating the scrubber's annual capital costs by 30%.

- EPA rejected Oklahoma's 2009 cost estimates that deviated from the CCM even though the State had site-specific vendor quotes to support those costs. Meanwhile, EPA deviated from the CCM without any site-specific cost support.

- EPA supported the FIP by aggregating visibility improvements from multiple units, even though OG&E specifically objected to that methodology in the administrative proceeding for being inconsistent with the regional haze regulations.

- EPA used its expert's after-the-fact cost analysis to substitute its judgment for the State's to achieve its desired result of requiring scrubbers on the OG&E Units. EPA's approach, endorsed by the Panel majority, eviscerates the role of the States as set out by Congress.

EPA could not justify its rulemaking without these errors because OG&E voluntarily adopted the use of low sulfur coal many years ago, thus minimizing any adverse impact on visibility. The Oklahoma SIP would have made that voluntary choice mandatory. EPA, however, was unsatisfied with anything less than the installation of scrubbers, which put it in the awkward position of having to justify huge costs from which only marginal visibility benefits will flow. It is no wonder EPA's rulemaking is not a model of expert agency work.

The Court should grant OG&E's request for panel rehearing or rehearing *en banc*. Petitioners State of Oklahoma and Oklahoma Industrial Energy Consumers ("OIEC") separately argue in their Petition for Rehearing *En Banc* that the majority decision not only permitted EPA to review the Oklahoma SIP for compliance with regulations, but went further and improperly deferred to the EPA on judgment issues contrary to the authority given to States by the CAA to make

BART determinations.  OG&E fully endorses the State's and OIEC's arguments in
support of their petition for rehearing *en banc*.

## ARGUMENT

## I.  THE MAJORITY'S DECISION DEPRIVES OKLAHOMA OF ITS CONGRESSIONALLY MANDATED ROLE WITH RESPECT TO DETERMINING BART.

The majority's decision, while recognizing the State's authority, did not

accord the State's decision-making the level of deference that comes with that

authority.  As the majority acknowledged, the CAA vests the State with authority

to make aesthetics-based BART determinations, including balancing the statutory

factors and giving them whatever weight that the State concludes is appropriate.

Op. at 6; *see* 42 U.S.C. § 7491(g)(2).  This provision is unique under the CAA,

because, unlike for health-based issues, the CAA does not require that a specific

emission limit be set by EPA and then met by the States, but instead leaves

judgment calls to the States.[1]  Thus, contrary to the approach taken by the majority,

for regional haze, the State, not EPA, is the "authorized agency" entitled to

deference under *Arizona Public Service Co. v. EPA*, 562 F.3d 1116, 1123 (10th

Cir. 2009).

---

[1] The use of the phrase "as determined by the State" in Section 169A of the
CAA, 42 U.S.C. § 7491(b)(2)(A), to describe the selection of BART is unique.
The phrase does not appear elsewhere in the CAA.  By contrast, the CAA assigns
the selection of Best Available Control Technology or BACT to "the permitting
authority."  § 7479(3).

Indeed, the only question for EPA on review of the State's determination should have been whether it represented a reasonable application of the EPA guidelines based on the record that existed when the State made its decision.  (*See* Diss. Op. at 3.)  Rather than review the State's determination for proper and reasonable exercise of its discretion, EPA hired a consultant to second-guess Oklahoma's choices (Op. at 8), EPA created projections of scrubber costs using its discretionary choices and assumptions after the State administrative record was closed (*id.* at 9), and EPA substituted its judgments for the site-specific analysis conducted by Oklahoma.  EPA did not give Oklahoma this information to consider in making its BART determination.  The CAA does not authorize the EPA to approach its review of the State's BART determinations in that way, and the majority's decision undermines the authority given to the State.[2]

A prime example of the majority's reversal of responsibilities between the states and EPA is its treatment of the CCM.  Oklahoma fully explained its decision

---

[2] The majority's decision conflicts with the D.C. Circuit's decision in *American Corn Growers*, 291 F.3d 1.  In that decision, the Court made it clear that States have significant autonomy in making BART determinations, and that authority is undermined if the Court gives EPA's consideration of a State's BART determination an arbitrary and capricious level of review.  While the Panel acknowledged the D.C. Circuit's concern that EPA would take action that "ties the states' hands," it nonetheless dismissed that concern simply because the CAA gives EPA some authority to review BART determinations.  Indeed, the Panel's failure to implement the CAA's direction for States to make BART determinations is reflected in its statement that "[a]ll the conference agreement referenced by the D.C. Circuit did was shift the initial responsibility for making BART determinations from the EPA to the state."  (Op. at 15-16.)

about the use of the CCM, but the majority deferred to EPA's determination that the State's rule could not be approved because the State departed from the CCM. (Op. at 23-24.)  A few pages later, the majority acknowledged that EPA departed from the CCM and the BART Guidelines in its own analysis (*id.* at 32, 40-41), but the majority nonetheless concluded that EPA had the authority to do so when examined under the arbitrary and capricious standard.  This approach is not consistent with the majority's recognition that EPA has a higher standard for disapproving a State's rule than it has for adopting its own rule.  (*Id.* at 25 n.7.)

The majority's decision cannot be justified by citing the CAA's delegation of authority to EPA to issue guidelines for BART determinations for utility sources that are over 750 megawatts.  (*Id.* at 17-18.)  OG&E never disputed EPA's authority to publish those guidelines, and, in fact, Oklahoma applied those guidelines in its BART determinations and explained the basis for its decisions. (Oklahoma SIP, JA 139.)  What is relevant is that EPA's regulations acknowledged the flexibility of *States* in making the cost determinations required by the CCM.  EPA could have had input in the State's determination had EPA conducted its review of the State BART determination and provided comments during the Oklahoma administrative proceeding.  That course would have been consistent with the role of the States and EPA as set out by Congress in the regional haze provision.

7

On rehearing, the Court should require EPA to prove that Oklahoma's SIP represents an unreasonable application of the regional haze provisions.

## II.    **THE MAJORITY'S DECISION MISREAD THE RECORD.**

Not only did the majority's decision give undue authority to EPA to overturn the State's BART determination contrary to the plain language of the Act, but the majority compounded that error by misconstruing the record in key areas that allowed EPA to avoid review of its substitution of its discretionary choices for those of the State.

### A.    The Majority's Decision Allowed EPA to Deviate from the Regional Haze Rule in Analyzing OG&E's Cost Benefit Analysis.

As recognized by Judge Kelly in his dissent (Diss. Op. at 2-4), the majority did not require EPA to adhere to the regional haze regulations and the CCM in performing the cost benefit analysis for scrubbers on the OG&E Units.  Over the course of the proposed and final rules, EPA sponsored six different cost estimates for the scrubbers.  (JA 1353-55, 1514, 1516, 1563-64, 1567-72.)  None of those cost estimates adhered to the CCM and EPA's guidelines for BART analyses because they used the wrong emission baseline or adopted technically infeasible scrubber designs.  EPA's publication of *six* different cost estimates in a 14-month period shows clearly that the CCM does not yield a single correct answer.  Oklahoma's analysis, based on actual engineering design work and vendor

quotations, was entitled to deference unless EPA could show the State acted unreasonably.

Instead, the majority let EPA use cost estimates that assumed artificially inflated emission reductions even though the regulations required States to use past actual emissions in their BART analysis. Petitioners demonstrated that, in other BART reviews, EPA applied that required standard. (Pet. Op. Br. at 24.) It was not reasonable for EPA to reject the State's cost determinations that used past actual emissions.

It also was not reasonable for EPA to evaluate costs for smaller scrubbers without determining their technical feasibility. The State considered detailed, technical specifications for the scrubbers at the OG&E Units in evaluating the costs. (*Id.* at 28-29.) EPA's estimates of costs for scrubbers designed to remove less $SO_2$ than the scrubbers evaluated by the State were based not on engineering designs but on models that provide only broad guidance. (Diss. Op. at 3; *see also* JA 1514-15 (six-tenth rule), JA 1567-68 (six-tenth rule), JA 1348 (SDA Cost Model).) EPA's consideration of scrubber design specifications was contrary to the Act's delegation of authority to the State and contrary to precedent recognizing that agency action on technical or scientific matters is entitled to deference only when those matters are *within the agency's area of expertise*. *See San Juan Citizens Alliance v. Stiles*, 654 F.3d 1038, 1045 (10th Cir. 2011). While EPA's

9

purpose, and accordingly the area of expertise where its decisions can receive

deference, may include the environmental impact of electricity generation, it does

not include facility design issues.  And as Judge Kelly noted, "EPA deserves no

such deference . . . where it does not support a conclusion contradicting

Oklahoma's first, reasonable, detailed technical conclusion."  (Diss. Op. at 3

(citing *Lockheed Martin Corp. v. Admin. Review Bd., U.S. Dep't of Labor*, No. 11-

9524, 2013 WL 2398691, at *3 (10th Cir. June 4, 2013))).

These errors require reconsideration.

B.    The Majority's Decision Allowed EPA to Arbitrarily Reject
       Oklahoma's Use of a 20-Year Scrubber Useful Life.

EPA did not have a reasonable basis to reject Oklahoma's use of a 20-year

useful life for the proposed scrubbers on the OG&E Units, resulting in a 30%

reduction in the annual capital cost of those scrubbers in EPA's cost evaluation.

(Pet. Op. Br. at 34-35 & n.21.)  The majority acknowledged that "the Control Cost

Manual does not reference any specific useful life for scrubbers."  (Op. at 40.)

Thus, there was nothing that required *Oklahoma* adopt a 30-year useful life in its

BART determination.  In reviewing the Oklahoma SIP, it was incumbent upon

EPA to demonstrate why it was unreasonable for the State to use a 20-year useful

life, and EPA made no attempt to do so, nor could it have made such a showing.

Oklahoma's approach in using the 20-year useful life was consistent with the

CCM, with EPA's own use of a 20-year useful life in other BART cost

10

evaluations, and with EPA's concession elsewhere that the use of an "amortization period of 20 years . . . is consistent with the EPA Control Cost Manual." (*See* Pet. Op. Br. at 34-35.)  The majority erroneously stated that Petitioners failed to raise this issue during the administrative review period.  (Op. at 42.)  But in its comments on the proposed EPA rule, OG&E specifically challenged EPA's use of a 30-year life and referred to Section 4.2.6.1 of the BART Costing Analysis as evidence that "nearly all other BART determinations for scrubbers have assumed a 20 year useful life in cost effectiveness calculations."  (OG&E EPA Comments, JA 1104-05 (cited in Pet. Op. Br. at 34).)  In turn, Section 4.2.6.1 of the BART Costing Analysis states that a 20-year useful life was used by EPA in several BART evaluations for retrofit FGD control systems, citing as examples the BART determinations for AEP and Kansas City Power & Light.  (JA 1168.)

Petitioners thus did raise specific examples of EPA's acceptance of a 20-year useful life for scrubber systems in BART determinations in other cases during the administrative proceedings.  EPA's concession that the CCM does not itself mandate a different result and its acknowledgement that a 20-year useful life is consistent with the CCM, combined with the specific examples cited by Petitioners in the administrative record, demonstrate that EPA had no basis to reject Oklahoma's use of a 20-year useful life.  The majority's refusal to consider fully this argument requires reconsideration.

11

C.     Petitioners Stated a Valid Objection to EPA's Use of Aggregate Visibility Impacts from Multiple Sources.

Petitioners argued that EPA improperly relied on a cumulative analysis of visibility improvement from the possible combined operation of scrubbers at all three power stations covered by the rule and failed to evaluate impacts attributable to each unit at each facility.  *See* Final Oklahoma Rule, 76 Fed. Reg. 81,728, 81,739 (Dec. 28, 2011), JA 34.  The majority, however, declined to consider Petitioners' argument because the majority erroneously believed that Petitioners failed to raise this argument during the administrative review.  (*See* Op. at 45.)

Here, too, the record shows that these issues were raised during the EPA rulemaking.  The language quoted by the majority was taken from a sentence in OG&E's comments that specifically referenced EPA's proposal to rely on cumulative visibility improvements from three facilities combined and commented that EPA must look at each facility separately  (*Id.* at 46.)  Yet, in the sentence immediately preceding the one quoted by the majority, OG&E also stated that "[t]his approach of setting BART for *an individual source* based on the aggregate visibility improvement that would result from the use of a control technology at multiple sources is clearly inconsistent with the CAA and EPA's own guidelines." (OG&E EPA Comments, JA 1108 (emphasis added).)

OG&E then proceeded to discuss, at length, the D.C. Circuit's decision in

*American Corn Growers*, 291 F.3d 1, and EPA's response to it.  Indeed, OG&E

quoted EPA's  revised regulations and emphasized the following language:

> Pursuant to the remand in American Corn Growers, we
> are amending the regional haze rule to require the States
> to consider the degree of visibility improvement resulting
> from a source's installation and operation of retrofit
> technology, along with the other statutory factors set out
> in CAA section 169A(g)(2), when making a BART
> determination. This has been accomplished by listing the
> visibility improvement factor with the other statutory
> BART determination factors in 40 CFR 51.308(e)(1)(A),
> so that *States will be required to consider all five factors,*
> *including visibility impacts, on an individual source basis*
> *when making each individual source BART*
> *determination*.

(OG&E EPA Comments, JA 1109 (emphasis added in OG&E Comments).)  Thus,

taking OG&E's comments in their entirety, the majority's refusal to consider

EPA's improper combination of more than one source in determining visibility

improvement for purposes of the evaluation of Oklahoma's SIP or the

promulgation of the FIP was contrary to the record.

D.    Petitioners Did Not Abandon Their Position That the Overnight Cost
      Method Is Not Required by the Control Cost Manual.

While noting that it was "not necessarily endorsing the EPA's approach to

costing methodology," the majority observed that Petitioners chose to abandon the

arguments made before EPA that the CCM did not support that methodology.  (Op.

at 38 n.11.)  This statement contradicts Petitioners' Opening Brief:  "the CCM does

13

not require that parties use the 'overnight' cost method" and "this approach is inconsistent with the CCM." (Pet. Op. Br. at 31, 32.) Petitioners also argued that "while EPA purported to reject the Oklahoma SIP because it did not faithfully adhere to the CCM, EPA itself engaged in selective adherence throughout its cost analysis." (*Id.* at 33.) Thus, Petitioners never abandoned their arguments. Moreover, the Panel's apparent reluctance to accept EPA's approach is understandable because there is nothing in the regulations or the CCM that required Oklahoma to ignore such significant costs as contingencies or AFUDC as EPA did in adopting the overnight cost method.

And here, as elsewhere, EPA failed to defer to Oklahoma's finding that OG&E had provided detailed documentation.[3] Indeed, the majority was incorrect to say that OG&E never delivered detailed vendor estimates to EPA. (Op. at 24.) In fact, OG&E provided EPA with the actual vendor quotations that supported its 2009 cost estimates. The spreadsheet mentioned by the Court was one small part of that submission. Nothing in the CCM or the BART guidelines required OG&E to provide any of this confidential business information or the formulas contained in the proprietary spreadsheet. Again, Oklahoma reviewed that information and found it sufficient, and EPA was required to show that Oklahoma's conclusion was

---

[3] The reasonableness of Oklahoma's determination is supported by the costs reported in recent public filings for actual scrubber installations. (*See* Pet. Mot. for Stay at 10, n.11.) The recent actual scrubber installation costs do not correspond with EPA's projections in this case.

14

not reasonable.  It was not enough for EPA simply to say that it would have liked

to see even more information.  These errors also require reconsideration.

## CONCLUSION

For all these reasons, the Court should grant OG&E's petition for panel

rehearing or rehearing *en banc* and vacate EPA's Final Rule.

Dated:  September 3, 2013

Respectfully Submitted,


/s/ Brian J. Murray
Brian J. Murray (IL SBN 6272767)
Charles T. Wehland (IL SBN 6215582)
JONES DAY
77 West Wacker Drive
Chicago, IL   60601
Telephone:  (312) 782-3939
Facsimile:    (312) 782-8585
Email:  bjmurray@jonesday.com
          ctwehland@jonesday.com

Michael L. Rice (TX SBN 16832465)
JONES DAY
717 Texas, Suite 3300
Houston, TX 77002
Telephone:  (832) 239-3640
Facsimile:    (832) 239-3600
Email:  mlrice@jonesday.com

**ATTORNEYS FOR OKLAHOMA
GAS AND ELECTRIC COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of September, 2013, a copy of the

Petition for Rehearing or Rehearing *En Banc* was served electronically on all

parties to this matter via the Court's CM/ECF system.

/s/ Brian J. Murray
Brian J. Murray

## CERTIFICATE OF DIGITAL SUBMISSION, ACCURACY OF HARD COPIES AND PRIVACY REDACTIONS

The undersigned certifies that:

(1) All required privacy redactions have been made;

(2) All hard copies of the foregoing pleading are exact copies of this ECF

filing; and

(3) This digital submission was scanned for viruses with McAfee VirusScan

Enterprise v8.7i, which was last updated on September 3, 2013.  According to this

program, this submission is free of viruses.

/s/ Brian J. Murray
Brian J. Murray