Case Nos. 12-9526, 12-9527

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

_____

**STATE OF OKLAHOMA EX REL. E. SCOTT PRUITT, in his official capacity as Attorney General of Oklahoma, OKLAHOMA INDUSTRIAL ENERGY CONSUMERS, OKLAHOMA GAS AND ELECTRIC COMPANY,**
*Petitioners,*

v.

**UNITED STATES ENVIROINMENTAL PROTECTION AGENCY,**
*Respondent,*

**SIERRA CLUB,**
*Intervenor-Respondent.*

_____

**PETITIONERS STATE OF OKLAHOMA AND OKLAHOMA INDUSTRIAL ENERGY CONSUMERS PETITION FOR PANEL OR *EN BANC* REHEARING**

_____

**E. SCOTT PRUITT, OBA #15828**
**ATTORNEY GENERAL OF OKLAHOMA**
**PATRICK R. WYRICK, OBA #21874**
**SOLICITOR GENERAL**
**P. CLAYTON EUBANKS, OBA #16648**
**DEPUTY SOLICITOR GENERAL**
**313 NE 21st Street**
**Oklahoma City, OK  73105**
**(405) 521-3921 (Voice)/(405) 522-0669 (Fax)**

**ATTORNEYS FOR PETITIONERS STATE OF OKLAHOMA AND OKLAHOMA INDUSTRIAL ENERGY CONSUMERS**

**SEPTEMBER 3, 2013**

# TABLE OF CONTENTS

**Page**

**Statement Required by Federal Rule of Appellate Procedure 35(b).** . . . . . . . . . . . . . . 1

**Background.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **I.**    **The CAA's Visibility Program and EPA's Limited Authority to Review a State's SIP.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    **II.**   **Oklahoma's SIP.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    **III.**  **Oklahoma's Petition for Review of EPA's FIP.** . . . . . . . . . . . . . . . . . . . 6

**Reasons For Granting Rehearing *En Banc*.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    **I.**    **The Panel Decision Conflicts with Decisions of the Supreme Court and Other Federal Courts of Appeals on the Proper Allocation of Federal-State Authority under the CAA.** . . . . . . . . . . . . . . 7

        **A.**   **The Panel Majority Erred in Conducting a *Chevron* Step 2 Analysis.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        **B.**   **The Panel Erred by Failing to Afford Deference to Oklahoma's Technical Judgments.** . . . . . . . . . . . . . . . . . . . . . . . 9

    **II.**   **The Present Conflict over Federal-State Regional Haze Authority Is a Recurring Issue of Importance in the Tenth Circuit.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        **A.**   **The Panel Decision Unduly Threatens the Primary Role of the States in the Future Implementation of the Regional Haze Program.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        **B.**   **The Panel Decision Gives EPA Undue License to Invalidate SIPs.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

**Conclusion.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Certificate of Service.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Certificate of Digital Submissions.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

## <u>TABLE OF AUTHORITIES</u>

### <u>FEDERAL CASES</u>

*Alaska Department of Environmental Conservation v. Envtl. Prot. Agency*,
    540 U.S. 461 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9-11, 12, 15

*American Corn Growers Association v. Envtl. Prot. Agency*,
    291 F.3d 1 (D.C. Cir. 2002).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-4, 8, 12, 15

*Arizona, et al., v. EPA*,
    No. 13-70366 (9th Cir. Aug. 9, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 9

*EME Homer City Generation, L.P. v. Envtl. Prot. Agency*,
    696 F.3d 7 (D.C. Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fla. Power & Light Co. v. Costle*,
    650 F.2d 579 (5th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Gen. Motors Corp. v. United States*,
    496 U.S. 530 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Michigan v. United States Envtl. Prot. Agency,*,
    No. 13-2130 (6th Cir. May 21, 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Oklahoma v. United States Envtl. Prot. Agency*,

    No. 12-9526, 2013 U.S. App. LEXIS 14364 (10th Cir. July 19, 2013). . . . . . . . . 1

*N. Dakota v. United States Envtl. Prot. Agency*,
    No. 12-1844 (8th Cir. Apr. 9, 2012), consolidated with Nos. 12-1961
    and 12-2331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nebraska v. United States Envtl. Prot. Agency, et al.*,
    No. 12-3084 (8th Cir. Sept. 4, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Pub. Serv. Co. of N.M. v. United States Envtl. Prot. Agency*,
    No. 11-9557 (10th Cir. Sep. 16, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Union Elec. Co. v. EPA*,
    427 U.S. 246 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

*Utah v. United States Envtl. Prot. Agency*,
    No. 13-9535 (10th Cir. Mar. 21, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>FEDERAL STATUTES</u>

**42 U.S.C. § 7401 (2013).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**42 U.S.C. § 7407 (2013).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**42 U.S.C. § 7472.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

**42 U.S.C. § 7491 (2013).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1, 3, 7, 15**

**42 U.S.C. § 7491.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2, 3, 5, 7, 8**

## <u>FEDERAL COURT RULES</u>

**Federal Rule of Appellate Procedure 18.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**Federal Rule of Appellant Procedure 35(a)(2).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

**Federal Rule of Appellate Procedure 35(b).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **1**

## <u>FEDERAL REGULATIONS</u>

**40 C.F.R. § 51.301 (2013).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**40 C.F.R. § 51.308(d)(1)(i)(B) (2012).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**40 C.F.R. § 51.308(e)(1)(ii)(A) (2012).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

**40 C.F.R. § 51.308(f).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

**40 C.F.R. § 51 App. Y.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

**40 C.F.R. § 52.21(b)(12) & (j) (2013).** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**Regional Haze Regulations,**
    **70 Fed. Reg. 39, 104 (July 6, 2005)**
       **codified at 40 D.F.R. pt. 51, subpt. P.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**Statement Required by Federal Rule of Appellate Procedure 35(b)**

A divided panel[1] of this Court applied an incorrect standard of review to the United States Environmental Protection Agency's ("EPA") rejection of Oklahoma's Regional Haze State Implementation Plan ("SIP"), and incorrectly found that EPA's extremely costly substitute Federal Implementation Plan ("FIP") was entitled to deference. Judge Kelly's dissent rightly observed that EPA "deserves no such deference" in rejecting Oklahoma's "reasonable, detailed technical conclusion[s]," and that EPA "has no authority to condition approval of a SIP based simply on a preference for a particular control measure." Add. 54-55.

The Panel Decision warrants immediate *en banc* review because it involves "a question of exceptional importance." FED. R. APP. P. 35(a)(2). Respectfully, the Panel Decision is fundamentally flawed for two reasons. First, the Panel Decision subverts the express authority granted to Oklahoma by the Clean Air Act's ("CAA") Visibility Program, 42 U.S.C. § 7491 (2013), and misapplies the holdings from two cases: *Alaska Department of Environmental Conservation* ("*Alaska Department*") *v. Envtl. Prot. Agency,* 540 U.S. 461 (2004) and *American Corn Growers Association* ("*Corn Growers*") *v. Envtl. Prot. Agency*, 291 F.3d 1 (D.C. Cir. 2002). Second, questions concerning whether and when EPA must respect state authority and discretion in developing a SIP are recurring questions of critical importance that will not end with this initial round of SIPs. Unless immediately corrected, the Panel Decision gives EPA undue license to improperly exercise its review authority

---

[1] Judges Briscoe, Lucero, and Kelly comprised the panel in *Oklahoma v. United States Envtl. Prot. Agency*, No. 12-9526, 2013 U.S. App. LEXIS 14364 (10th Cir. July 19, 2013). Judge Briscoe authored the opinion and was joined by Judge Lucero.

against all states within the Tenth Circuit and elsewhere. Because the Panel Decision is deeply flawed and fails to comport with the decisions of the United States Supreme Court ("Supreme Court") in *Alaska Department* and the D.C. Circuit in *Corn Growers*, the Court should immediately grant *en banc* review to resolve the conflict engendered by the Panel Decision and to preserve the delicate balance of power that Congress envisioned under the Visibility Program.

## Background

### I.     The CAA's Visibility Program and EPA's Limited Authority to Review a State's SIP

The CAA establishes "a comprehensive national program that makes the States and the Federal Government partners in the struggle against air pollution." *Gen. Motors Corp. v. United States*, 496 U.S. 530, 532 (1990). The Visibility Program specifically addresses the CAA's aesthetic goals: "prevention of any future, and the remedying of any existing, impairment of visibility in mandatory class I Federal areas, which impairment results from manmade air pollution."[2] § 7491(a)(1).

While based on a cooperative-federalism approach, the CAA recognizes that "air pollution prevention . . . and air pollution control at its source is the primary responsibility of States and local governments." 42 U.S.C. § 7401(a)(3) (2013) (emphasis added); *see also*

---

[2]  The term "mandatory class I Federal areas" is defined as "Federal areas which may not be designated as other than class I."  42 U.S.C. § 7491(g)(5).  "Class I" areas include all international parks, national wilderness areas that exceed 5,000 acres in size, national memorial parks that exceed 5,000 acres in size, and national parks that exceed 6,000 acres in size and that were in existence on August 7, 1977. *See* 42 U.S.C. § 7472(a). There are 156 mandatory Class I Federal areas. *See* 70 Fed. Reg. 39,104, 39,105/1 (July 6, 2005). More than half of the Class I Federal areas are located in states that comprise the Tenth Circuit.

42 U.S.C. § 7407(a) (2013) ("Each State shall have the primary responsibility for assuring air quality within the entire geographic area comprising such State . . . ."). Accordingly, the Visibility Program vests the States with the authority to develop and implement SIPs including "reasonable progress" measures and best available retrofit technology ("BART") determinations. *See* § 7491; *accord Corn Growers,* 291 F.3d at 7-8. EPA, for its part, is tasked with issuing regulations that direct States to submit SIPs containing "such emission limits, schedules of compliance and other measures as may be necessary to make reasonable progress toward meeting" the national visibility goal. § 7491(b)(2).[3] To aid states in making their BART determinations, EPA issued its "Regional Haze Regulations and Guidelines for Best Available Retrofit Technology (BART) Determinations; Final Rule." ("BART Guidelines"). 70 Fed. Reg. 39,104 (July 6, 2005) (codified at 40 C.F.R. pt. 51).

Pursuant to the CAA, utilization of the BART Guidelines is only required when a State makes a BART determination for a powerplant that is 750MW or greater.[4] § 7491(b). Further, under these Guidelines, EPA acknowledges that it is the States that identify which BART sources "'may reasonably be anticipated to cause or contribute to any impairment of visibility in any mandatory Class I Federal area.'" 70 Fed. Reg. 39,106/1-2 (Dec. 30, 2005). Once identified, the States "must determine the appropriate level of BART control for each source subject to BART." 70 Fed. Reg. 39,107/3 (Dec. 30, 2005). In determining BART,

---

[3] In its regulations, EPA established that *the goal* of natural visibility conditions be attained by the year 2064. 40 C.F.R. § 51.308(d)(1)(i)(B) (2012). BART is the first of the reasonable progress control measures to be employed over the course of the sixty-year Visibility Program.

[4] The BART determinations at issue in Oklahoma were for sources greater than 750MW. Add. 13; see also Oklahoma Regional Haze Implementation Plan Revision at 75 (Feb. 2, 2010) (JA 139).

3

States must weigh certain factors: "the costs of compliance, the energy and non-air quality environmental impacts of compliance, any existing pollution control technology in use at the source, the remaining useful life of the source, and the degree of improvement in visibility which may reasonably be anticipated to result from the use of such technology." 40 C.F.R. § 51.308(e)(1)(ii)(A) (2012). In short, as emphasized by the D.C. Circuit in *Corn Growers*, the CAA "give[s] the States broad authority over BART determinations," and how a state weighs the BART factors. 291 F.3d at 8. This is true for all sources subject to the BART Guidelines, including those that are 750 MW or greater.

As to EPA's oversight role in reviewing a SIP, EPA may only reject a State's determination when it finds that the State's determination is not supported by the data or analysis or that it fails to comply with the Regional Haze program. *See* § 7410(k)(3) (2013) and 40 C.F.R. 51.308(e)(1)(ii)(A). The CAA "gives the [EPA] no authority to question the wisdom of a State's choices of emission limitations" if such choices are "part of a plan which satisfies the standards of § [7410(a)(2)]." *Id.* (emphasis added), *see also Union Elec. Co. v. EPA*, 427 U.S. 246, 250 (1976) (the CAA provides that EPA "'shall approve' the proposed plan if it has been adopted after public notice and hearing" and if it meets the "specified criteria" set forth in ['7410(a)(2)]). In short, the division of authority between EPA and the States "is strict," and establishes a "federalism bar." *EME Homer City Generation, L.P. v. Envtl. Prot. Agency*, 696 F.3d 7, 29 (D.C. Cir. 2012). This "statutory federalism bar prohibits EPA from using the SIP process to force States to adopt specific control measures." *Id.*

## II.    Oklahoma's SIP

In developing its SIP, Oklahoma identified six major stationary sources contributing to visibility impairment—two units at Oklahoma Gas and Electric Company's ("OG&E") Muskogee Generating Station, two units at its Sooner Generating Station, and two units owned and operated by Public Service Company of Oklahoma. Add. 6-7.  After a thorough case-by-case analysis, Oklahoma determined that BART for each source was the mandatory use of low-sulfur coal at the relevant units.  Add. 8.; *see also* § 7491(g)(2).  Oklahoma reasonably determined that the cost of installing sulfur dioxide scrubbers at each unit was too high and the benefit too low to warrant their installation.  Add. 8.  Moreover, due to the cost of installation, the State believed that scrubbers would "extend the life expectancy of coal as the primary fuel in the Sooner [and Muskogee] facilit[ies] for at least 20 years and beyond." Add. 8.  On February 17, 2010, Oklahoma submitted its SIP to EPA.  Add. 5, 7.

On March 22, 2011, EPA proposed a rule rejecting Oklahoma's BART determinations for these Units, claiming that Oklahoma greatly overestimated the costs of dry and wet scrubbing, thereby failing to properly consider one of the five BART factors—the costs of compliance.  Add. 8.  In its proposed rejection of Oklahoma's SIP, EPA asserted that the State violated the BART Guidelines by using real-world, site specific data rather than hypothetical costs contained in EPA's Control Cost Manual.[5]  But, as Oklahoma and OG&E explained in their comments to EPA's proposed disapproval of the SIP, EPA's own BART

---

[5]  Such an argument is dubious, considering EPA requested that OG&E supplement the Control Cost Manual analysis with those real world costs now deemed violative of the BART Guidelines.

Guidelines provide that the Control Cost Manual is to be used only where possible, and that states may use, and in fact should use, more relevant and specific data when it is available. 40 C.F.R. § 51 app. Y at IV(D)(4)(a)(5) (2013); *see also* 76 Fed. Reg. 81,744 (Dec. 28, 2011) (JA 39).

EPA also concurrently proposed a FIP in lieu of the State's SIP, based solely on EPA's consultant's conclusions that the costs of compliance could be lowered at these Units by installing scrubbers smaller than those considered by Oklahoma. Add. 8-9, 31-32. In comments submitted by Oklahoma and OG&E in response to EPA's proposed FIP, Oklahoma and OG&E explained that EPA's consultant—and, therefore, EPA's proposed BART determinations—were based on three fundamental errors: (1) that the Units burned coal that, in fact, they do not burn; (2) that the Units could have installed scrubbers that are actually too small and will not fit; and (3) that, but for one Unit, EPA's projected degree of visibility improvement associated with the scrubbers is not even humanly perceptible. Add. 53-55. EPA ignored Oklahoma's comments (and its SIP) and proceeded to promulgate its FIP, rejecting Oklahoma's reasonable BART determinations. Add. 9.

### III.    Oklahoma's Petition for Review of EPA's FIP

Oklahoma, OG&E, and Oklahoma Industrial Energy Consumers ("OIEC") petitioned this Court for review of EPA's rejection of its SIP and imposition of EPA's FIP. Pursuant to Federal Rule of Appellate Procedure 18, Oklahoma, OG&E, and OIEC moved to stay EPA's FIP pending judicial review. Concluding that Oklahoma, OG&E, and OIEC met the factors for issuing a stay of EPA's FIP, including demonstration of a substantial likelihood

of success on the merits, Judges Kelly and Holmes granted the Motion for Stay on June 22, 2012. After applying an incorrect legal standard of review, a divided panel of this Court ultimately held that EPA had not acted arbitrarily and capriciously in rejecting Oklahoma's SIP. Add. 22-23. The Panel Decision rests on the fundamental error that EPA has authority to second guess Oklahoma's BART determinations despite the CAA's clear directive that EPA must give deference to a state's reasoned BART determinations.

## Reasons For Granting Rehearing *En Banc*

**I.    The Panel Decision Conflicts with Decisions of the Supreme Court and Other Federal Courts of Appeals on the Proper Allocation of Federal-State Authority under the CAA.**

### A.    The Panel Majority Erred in Conducting a *Chevron* Step 2 Analysis.

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) provides the standard of review applicable to EPA's interpretation of the CAA. Under *Chevron*, a court must first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. Clear congressional intent "is the end of the matter." *Id.* at 842-43. Only if the statute is silent or ambiguous as to the precise question at issue may a court apply the second step and ask "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843.

Here, 42 U.S.C. § 7491 makes it abundantly clear that the State makes BART determinations in the first instance and that EPA's role is limited to promulgating regulations that merely guide those determinations. § 7491(a)(2), (4). The Visibility Program

unambiguously directs that: (1) identification of major stationary sources should be "as determined by the State" (2) for the purpose of procuring, installing, and operating BART "as determined by the State." § 7491(b)(2)(A); *accord Corn Growers*, 291 F.3d at 8. Further, in determining BART, "the State . . . shall take into consideration" the five BART factors. § 7491(g)(2). The D.C. Circuit relied solely on *Chevron* Step I when it found that Congress afforded the States "broad authority over BART determinations." *Corn Growers*, 291 F.3d at 8. Further, the Visibility Program by its terms and its legislative history gives the states the primary authority to determine BART. "The Conference Report [on the 1977 Amendments to the CAA] confirms that Congress intended the states to decide which sources impair visibility and what BART controls should apply to those sources." *Corn Growers*, 291 F.3d at 8; *see also* H.R. CONF. REP. NO. 95-564 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1502, 1536 (referencing the agreement).

Here, the Panel Majority erred in reasoning that, even though Congress directed "that the State make BART determinations," Congress limited state decisions by giving EPA the authority to issue *guidelines* for BART determinations and by requiring the states to adhere to EPA guidelines for conducting BART analyses. Add. 12, 16. By adopting EPA's erroneous interpretation of its own authority, the panel controverted clear congressional intent, giving the states only one real choice: make a BART determination that mirrors what EPA would do if it, rather than the State, were tasked with making the initial BART determination. Thus, while the panel correctly concluded that EPA could never *directly* make a BART determination in the first instance, the panel gave EPA the power to *indirectly*

do exactly that.[6]   Employing *Chevron* in this manner renders the states' ability to make BART determinations illusory.

**B.      The Panel Erred by Failing to Afford Deference to Oklahoma's Technical Judgments.**

The Supreme Court examined the standard of review to be applied in a CAA program where the statute gives EPA an even greater supervisory role than in Regional Haze and BART cases.   In *Alaska Department*, EPA disapproved Alaska's best available control technology ("BACT") determination.[7]  540 U.S. at 477-78.  The Supreme Court held that the state identifies BACT consistent with the CAA's terms and that EPA then reviews whether the BACT determination is reasonably moored to the CAA and faithful to the statute's definition of BACT.   *Id*. at 484.   The Supreme Court did not, however, conclude that the standard of review is to defer to EPA's opinion of what BACT should be.[8]   Rather, the Court found that while the reviewing agency maintains an oversight role, this role is limited to a determination of whether the state's BACT determination "is not based on a reasoned analysis."   *Id*. at 490.   EPA itself even recognized in *Alaska Department* that it must accord

---

[6]   Indeed, EPA indirectly made a BART determination by rejecting Oklahoma's SIP for failure to comply with the Agency's interpretation of BART guidelines.

[7] When undertaking a BACT analysis, the state applies an analysis similar to the one it uses when making a BART determination except that with BACT, states are not required to consider the amount of anticipated visibility improvement from the installation and use of a potential control technology. *Compare* 40 C.F.R. § 52.21(b)(12) & (j) (2013) (describing BACT requirements) *with* 40 C.F.R. § 51.301 (2013) (defining BART).

[8]   The Supreme Court so concluded even though, contrary to the CAA's clear directive that states enjoy great deference in making BART determinations, EPA has been granted "notably capacious" authority over the states' BACT determinations.   *Alaska Department*, 540 U.S. at 484.

appropriate deference to a state's BACT determination and that it may not "second guess" a state's decision. *Id*.

EPA's authority to reject a state's BACT determination arises "[o]nly when a state agency's BACT determination is not based on a reasoned analysis" and is "arbitrary." *Id*. at 490-91. Thus, in reviewing EPA's purely supervisory role, the Supreme Court held that "the production and persuasion burdens remain with EPA and the underlying question a reviewing court resolves remains the same: Whether the state agency's BACT determination was reasonable, in light of the statutory guides and the state administrative record." *Id*. at 494.

Regarding Oklahoma's BART determination, this is the same test that EPA was required to apply, yet failed to follow. On the contrary, in this case, EPA second-guessed the State's costing methods and its two sets of cost estimates, contending that they failed to comply with EPA guidelines. EPA erroneously argued—and the panel majority agreed—that Oklahoma failed to follow a particular costing methodology, that OG&E's costing assumptions were flawed, and that even OG&E's detailed cost estimates, provided at EPA's request, were inadequate. Oklahoma raised numerous objections and counter-arguments to these conclusions during the FIP rulemaking process, but the panel found that Oklahoma failed to show that EPA's approach was arbitrary and capricious. Add. 26. This finding requires Oklahoma to disprove the validity of EPA's conclusions, but *Alaska Department* mandates otherwise. It is EPA that bears the burden of showing that Oklahoma's costing

methods, and ultimately its BART determination, were unreasonable, and the panel erred in holding EPA to a lesser standard.[9]

Finally, in *Alaska Department*, the Supreme Court determined that EPA's explanations for rejecting Alaska's BACT determination were "skeletal," but that, taken together with EPA correspondence, these explanations were based in the determination that Alaska's methodologies and technical judgments were unreasonable. 540 U.S. at 496-97. At no time did EPA in *Alaska Department* supplant its technical judgments or consultants for those of the state. Nor did the Supreme Court suggest that deference to such a method would pass the scrutiny of a reviewing court. Rather, EPA there concluded that Alaska's BACT determination lacked *any* evidentiary support. *Id*. at 499. That is clearly not the case with Oklahoma, who submitted to EPA a SIP and administrative record that contained in-depth analysis on how the State arrived at its determinations and the underlying data supporting that analysis.

Judge Kelly's dissent recognized this proper standard of review. Add. 52. Emphasizing that in a case in which the State is granted the authority to make—and does make—a first, reasonable, detailed technical conclusion, EPA's actions deserve no deference. "[EPA] has no authority to condition approval of a SIP based simply on a preference for a particular control measure." Add. 54. Further, Judge Kelly noted that "[m]any of the same

---

[9]  Simultaneous to Oklahoma's filing of the instant Petition for Rehearing *En Banc*, OG&E filed a Petition for Panel Rehearing, wherein OG&E emphasizes the numerous technical examples in which the panel deferred to EPA's judgments even though EPA failed to follow the Control Cost Manual. Moreover, OG&E stresses that the panel allowed EPA to take a flexible approach to compliance with the Control Cost Manual while requiring Oklahoma to explain any deviation or variance therefrom. Oklahoma fully endorses OG&E's arguments.

reasons for rejecting the SIP were used to justify the FIP[,]" although both measures were taken in the same rulemaking action. Add. 52. Consequently, Judge Kelly would have found EPA's actions arbitrary and capricious and would not have deferred to EPA's technical judgments and experts. Add. 52-53. Judge Kelly further recognized that EPA failed to provide record evidence to support why its own contrary BART determinations were justified. Add. 54.

## II.   The Present Conflict over Federal-State Regional Haze Authority Is a Recurring Issue of Importance in the Tenth Circuit.

### A.   The Panel Decision Unduly Threatens the Primary Role of the States in the Future Implementation of the Regional Haze Program.

Not only does the conflict between the Panel Decision and *Alaska Department* and *Corn Growers* provide a compelling basis for rehearing *en banc*, so too does the threat that the Decision poses to the states' fundamental ability to implement the Regional Haze program. So long as a state's SIP meets the criteria set forth in the Visibility Program, EPA has no authority to reject that SIP. When EPA impermissibly rejects a state's SIP, it "usurps state initiative in the environmental realm," thereby "disrupt[ing] the balance of state and federal responsibilities that undergird the efficacy of the [CAA]." *Fla. Power & Light Co. v. Costle,* 650 F.2d 579, 589 (5th Cir. 1981). This threat is not limited just to BART determinations. The Panel Decision threatens the states' ability to make future discretionary reasonable progress decisions called for under the ongoing administration of the Visibility Program and Regional Haze Rules.

Specifically, Oklahoma's SIP is the first of many SIPs that Oklahoma and other states in the Tenth Circuit will develop and implement over the course of the remaining fifty-one years under EPA's current Regional Haze Rules. All states must develop and submit subsequent SIPs for future Regional Haze planning periods, with the next SIP due in 2018. *See* 40 C.F.R. § 51.308(f).  As such, the erroneous Panel Decision dramatically constrains the states' future ability to act with the authority and discretion intended by Congress in all future planning periods.

Additionally, stripping states of their ability to make reasoned discretionary choices can have real adverse social and economic consequences to the citizens of states like Oklahoma.  As noted by Judge Kelly, "[t]he EPA's rule here requires OG&E to make a $1.2 billion dollar investment over the next five years that will, even under EPA's estimate, result in no appreciable change in visibility.  Moreover, there is no evidence this investment will have any effect whatsoever on air quality."  Add. 55**.**  This $1.2 billion cost is one that Oklahoma ratepayers will directly bear in the form of higher electricity rates. It is precisely the weighing of costs and benefits such as these that Congress determined should be made by the states and not EPA. Oklahoma, not EPA, is best situated to make public interest determinations that affect the well-being of its citizens.

### B.    The Panel Decision Gives EPA Undue License to Invalidate SIPs.

The extreme uncertainty created by the Panel Decision regarding the proper standard of review that a Court must apply when reviewing EPA's promulgation of a SIP is of exceptional importance within this Circuit and beyond. Multiple states in the Tenth Circuit

have had FIPs imposed on them, and a fundamental question before this Court in each of those cases will involve application of a standard of review for determining whether EPA had a reasonable basis for taking the challenged action. Unless corrected, the Panel Decision's erroneous standard of review will likely carry forward in all cases, pending and yet to come, in which EPA promulgates its own FIP after rejecting a state SIP without a proper basis.

Specifically, in the Tenth Circuit, New Mexico and Utah have each had their SIPs partially rejected by EPA, and each state has filed petitions for review of EPA's FIP with this Court.[10]  While New Mexico's claims are on hold pending settlement discussions, Utah's case is in the midst of briefing.[11]  Notably, Wyoming is also facing the prospect of an EPA veto of its SIP.[12]

Moreover, EPA has been quick to parade the Panel Decision before other Circuits currently grappling with their own petitions in cases where EPA rejects a state SIP and imposes its own FIP.  For instance, in the case of *North Dakota v. E.P.A.*, currently pending before the Eighth Circuit, EPA recently filed a Rule 28(j) letter—well after merits briefing

---

[10]  *See Utah v. United States Envtl. Prot. Agency,* No. 13-9535 (10th Cir. Mar. 21, 2013); *Pub. Serv. Co. of N.M. v. United States Envtl. Prot. Agency*, No. 11-9557 (10th Cir. Sep. 16, 2011).

[11]  Upon issuance of the Panel Decision, Utah filed with the Tenth Circuit a motion to either stay briefing in its case or, alternatively, extend the deadline for filing an opening brief (1) until Oklahoma's Petition for Rehearing *En Banc* is filed or (2) until August 30, 2013.  Mot. to Stay Briefing at 6, *Utah*, No. 13-9535, ECF No. 01019096929.  In its Motion, Utah noted that the Panel Decision directly impacts Utah's pending case. *Id*. at 3.

[12]  *See* Approval, Disapproval and Promulgation of Implementation Plans; State of Wyoming; Regional Haze State Implementation Plan; Federal Implementation Plan for Regional Haze, Proposed Rule, 78 Federal Register 34,738 (June 10, 2013) (to be codified at 40 C.F.R. pt. 52).

14

and oral argument—informing the Court of the Panel Decision.[13]  Further, Nebraska and Michigan have each filed petitions for review in the Sixth and the Eighth Circuits, seeking the Court's review of EPA's action rejecting the states' SIPs and imposing its own FIP in their place.[14]  In the Ninth Circuit, briefing has just begun in the case of *Arizona, et al., v. EPA,* No. 13-70366 (9th Cir. Aug. 9, 2013), and there too the issue of whether the Panel Decision correctly determined the standard of review is immediately at issue.[15]  Unless corrected, the Panel Majority's erroneous opinion concerning the applicable standard of review could shape the outcome of several Tenth Circuit Regional Haze cases, and influence Regional Haze cases pending in several other Circuits. Unless immediately corrected, EPA will likely, in case after case, invoke the Panel Decision as its broad license to dramatically reduce (and replace) the States' role under the Regional Haze Program.  That is not the standard of review set forth in 42 U.S.C. § 7491 or the standard of review adopted by the Supreme Court in *Alaska Department* or by the D.C. Circuit in *Corn Growers*. It is also inconsistent with the cooperative-federalism bar set forth in the CAA.

## Conclusion

The Petition for Rehearing *En Banc* should be granted; the panel's judgment should be vacated, and the petition for review of EPA's final decision should be restored to the Court's docket as a pending appeal.

---

[13]  *N. Dakota v. United States Envtl. Prot. Agency*, No. 12-1844 (8th Cir. Apr. 9, 2012), consolidated with Nos. 12-1961 and 12-2331, argued May 14, 2013.

[14]  *Michigan v. United States Envtl. Prot. Agency*, No. 13-2130 (6th Cir. May 21, 2013); *Nebraska v. United States Envtl Prot. Agency, et al.*, No. 12-3084 (8th Cir. Sept. 4, 2012).

[15]  *See* Opening Br. of Pet'r Arizona at 29, Docket Entry 31-1, Aug. 5, 2013.

Respectfully Submitted,

**s/ E. SCOTT PRUITT**
**E. SCOTT PRUITT, OBA #15828**
**Oklahoma Attorney General**
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-0669 Fax
Service email:     fc.docket@oag.ok.gov
                        scott.pruitt@oag.ok.gov


Patrick Wyrick, OBA #21874
Solicitor General of Oklahoma
P. Clayton Eubanks, OBA #16648
Deputy Solicitor General
Office of the Oklahoma Attorney General
313 NE 21st Street
Oklahoma City, OK   73105
Telephone:  (405) 521-3921
Facsimile:   (405) 522-0669
Service email:     tom.bates@oag.ok.gov
                        patrick.Wyrick@oag.ok.gov
                        clayton.eubanks@oag.ok.gov

**ATTORNEYS FOR PETITIONER STATE OF**
**OKLAHOMA, EX REL., E. SCOTT PRUITT**

s/  Michael Graves
Michael Graves, OBA #3539
Thomas P. Schroedter, OBA #7988
Hall Estill, Attorneys at Law
320 South Boston Avenue, Suite 200
Tulsa, OK 74103-3706
Telephone:  (918) 594-0443
Facsimile:   (918) 594-0505
mgraves@hallestill.com
tschroedter@hallestill.com

**ATTORNEYS FOR PETITIONER OKLAHOMA**
**INDUSTRIAL ENERGY CONSUMERS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 3, 2013, a true and correct copy of the above and foregoing instrument electronically filed with this Court and was served electronically on all parties to this matter via the Court's CM/ECF system.

**s/ E. SCOTT PRUITT**

## CERTIFICATE OF DIGITAL SUBMISSION

This is to certify that:

1.     All required redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the document filed with the Clerk;

2.     The digital submissions have been scanned for viruses with Sophos Endpoint Security and Control, 10.0, Updated 9/3/13, and according to said program, are free of viruses.

**s/ E. SCOTT PRUITT**